*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1419**

Bool Partners Limited Partnership,
Respondent,

vs.

Jennifer Lensing,
Appellant.

**Filed May 23, 2016
Affirmed
Connolly, Judge**

Ramsey County District Court
File No. 62-HG-CV-15-1208

Douglass E. Turner, Christopher T. Kalla, Donna E. Hanbery, Hanbery & Turner, P.A., Minneapolis, Minnesota (for respondent)

Nahid Hussein Abuelhassan, Abuelhassan Law PLLC, St. Paul, Minnesota (for appellant)

Considered and decided by Reilly, Presiding Judge; Connolly, Judge; and Johnson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CONNOLLY**, Judge

Appellant challenges the nonrenewal of her lease, arguing that the district court's findings that respondent, her landlord, had a business reason for not renewing her lease and

that the nonrenewal of her lease was not retaliatory were clearly erroneous. Because the record does not indicate that these findings were clearly erroneous, we affirm.

## FACTS

In June 2013, appellant Jennifer Lensing began to rent an Internal Revenue Code (IRC) Section 42 tax credit apartment from respondent Bool Partners Limited Partnership for herself and her three children. The one-year lease provided that: (1) rent was due on the first day of each month, (2) a late fee of $50 would be charged after the second day of the month, and (3) "any amount (whether for rent or other charges) is due when [respondent] asks for it." In July 2013 and again in August 2013, appellant's rent payments were late. Respondent filed an eviction action against her, which was settled by an agreement that appellant would pay $2,529 within seven days. Her rent payments were again late in September 2013, November 2013, December 2013 and January 2014.

In June 2014, appellant signed another one-year lease, providing that she would pay $918 monthly until the lease expired at the end of May 2015. Her rent was again late, and she agreed to a payment plan whereby she would pay $700 in July, $700 in August, and $1,354 (the remaining $218 of the July payment and the August payment and the $918 of the September payment) in September.

On September 5, 2014, respondent notified appellant and other tenants who had not made timely rent payments that there would be no further payment plans and that partial rent payments would no longer be accepted. At this time, respondent made the decision

2

not to renew the leases of tenants whose rent payments continued to be late.[1]  Later in September 2014, respondent began a second eviction action against appellant for nonpayment of rent.

The court date was set for October 7, 2014.  On October 6, respondent returned appellant's partial payment pursuant to its September 5 notice and instructed her to bring full payment to court. On October 7, appellant entered into a settlement agreement to redeem her tenancy by paying all sums due ($2,270.30) within seven days, which she did. In December 2014, respondent began a third eviction action against appellant for unpaid rent.

On January 29, 2015, appellant contacted respondent to discuss her desire to install, at her own expense, hardwood flooring because her autistic child and her dog had been urinating on the carpet.  She and respondent met on February 12, 2015, to discuss the flooring issue.  At the meeting, respondent told appellant that installing new flooring at her own expense would be unwise because her lease would not be renewed when it expired at the end of May 2015.  Respondent also offered to have the carpet cleaned at its expense.

The next day, February 13, 2015, appellant filed a discrimination charge against respondent with the Minnesota Department of Human Rights (MDHR), alleging that respondent had discriminated by failing to accommodate her disabled child.  On March 3, 2015, respondent sent appellant a confirmation of nonrenewal, telling her that she could

---

[1] Appellant argues that this decision was made after respondent learned appellant had filed the discrimination charge, but both respondent's property manager and its director of property management testified that the decision not to renew the leases of all tenants whose rent payments were repeatedly late was made in September 2014.

either (1) send respondent a notice of vacation before March 13 or (2) expect to receive a notice of nonrenewal from respondent on March 16. Respondent did not receive notice of appellant's discrimination charge from MDHR until March 17, 2015; the notice was dated March 11, 2015.

After receiving the confirmation of nonrenewal, appellant asked respondent for its reasons for not renewing her lease. Respondent wrote that appellant "[had] been late in paying [her] rent 9 times since moving in 6/1/2013 and [respondent had] had to file with the court 3 times in regards to nonpayment of rent." Appellant rejected respondent's offer of a one-month extension on her lease, but did not vacate the apartment on May 31, 2015.

Respondent began an eviction action. Following a trial, judgment was entered for respondent and appellant was ordered to vacate by August 24, 2015. She did not vacate, and respondent was issued a writ of recovery of premises. The district court then granted appellant's motion to stay execution of the writ of recovery pending appeal. Appellant filed a notice of appeal; respondent filed a motion with this court challenging, under Minn. Stat. § 504B.371, subd. 7 (2014) (providing that, in an action on a lease against a tenant who is holding over, if the landlord gives a bond, the district court "shall issue a writ for recovery of premises and order to vacate notwithstanding the notice of appeal"), the district court's order granting a stay pending appeal. This court reversed the stay order and remanded for the district court to apply subdivision 7.

Appellant challenges the judgment in the eviction action, arguing that the district court's findings that respondent had good cause for not renewing appellant's lease and that

4

the nonrenewal of her lease was not retaliatory for her filing a discrimination complaint with MDHR.[2]

## D E C I S I O N

"An eviction proceeding is civil in nature, and generally the only issue for determination is whether the facts alleged in the complaint are true. Therefore, our standard of review is whether the district court's findings of fact are clearly erroneous." *Cimarron Vill. v. Washington*, 659 N.W.2d 811, 817 (Minn. App. 2003) (citation omitted).

**1.  Good cause for nonrenewal**

The parties agree that, under IRC § 42(h)(6)(E)(ii)(I), "the eviction or the termination of tenancy (other than for good cause) of an existing tenant of any low-income unit" is not permitted. Appellant argues that respondent did not have good cause. The district court concluded that "[I]n this case, good cause existed for termination of the lease due to the late payments and multiple eviction actions being filed against [appellant]." *See id.* at 817-18 (concluding that, under the good cause standard, late payments could be relied on as a reason for eviction if the landlord had refused the late payments when they were offered). Respondent did refuse appellant's late payments and could rely on her history of late payments and eviction actions as good cause for not renewing her lease.

---

[2]Appellant also raises the issue of "[w]hether the district court erred in ruling for . . . [respondent] by ordering . . . appellant to vacate." This court has already resolved the issue in its October 8, 2015, order: relying on Minn. Stat. § 504B.371, subd. 7, it concluded that "[respondent] is correct that under the circumstances here, [it] may give a bond and proceed with execution of the writ of recovery."

## 2.	Retaliation

If a notice to quit is served within 90 days of a tenant's "good faith report to a governmental authority of the [landlord's] violation of a health, safety, housing, or building code or ordinance," the burden of proving that the notice to quit was not served in whole or in part for a retaliatory purpose rests on the landlord. Minn. Stat. § 504B.285, subd. 2 (2) (2014). The district court found that: (1) respondent decided not to renew appellant's lease because of her history of late payments and eviction actions, (2) respondent made this decision before appellant mentioned her desire to accommodate her child by installing hardwood flooring, and (3) respondent informed appellant of the decision so she would not spend money on flooring for an apartment she would soon be leaving. Based on these findings, the district court concluded that the nonrenewal of appellant's lease was not retaliatory.

Moreover, appellant was later told in a letter that the problem with the floor could be addressed either by having her carpet cleaned at respondent's expense, or, in the alternative, by her giving respondent "specific proposals on the flooring material [she] would like to install for the remaining weeks of [her] tenancy" if she wanted to install new flooring even though her lease would not be renewed. Appellant did not accept either alternative, but the fact that the alternatives were offered puts in doubt whether appellant's report to MDHR was a "*good faith* report to a governmental authority of the [landlord's] violation of a health, safety, housing, or building code or ordinance." Minn. Stat. § 504B.285, subd. 2 (2) (emphasis added). In any event, respondent has met its burden of proving both that it had a good cause for its decision not to renew appellant's lease and that

6

the act for which the nonrenewal was allegedly retaliating occurred after respondent had decided not to renew her lease. The district court's findings on these points were not clearly erroneous.

**Affirmed.**